7114, Vasquez v. Shinseki. Ms. Loggins, when you're ready, please proceed. Good morning, Your Honor. May it please the Court. In this case, the Veterans Court explicitly held, and I'm going to quote from the opinion because I think this is important, the issue before the Board was not how many areas Mr. Vasquez-Claudio had demonstrated deficiency in, but rather the frequency, severity, and duration of psychiatric symptoms, the length of remission, and Mr. Vasquez-Claudio's capacity for adjustment during periods of remission. They said that's not the issue for the Board. They said this is directly contrary to the plain language of the governing regulations, which is 4.130, which clearly unambiguously places that issue before the Board. Now, 38 CFR 4.130 says that a Veteran is entitled to a 70% disability rating for his mental disorder if he has occupational and social impairments with deficiencies in most areas, such as work, school, family relations, judgment, thinking or mood due to such symptoms as, and then the regulations list exemplary symptoms, as set forth in Mauerhand and his Court's opinion in Sellers. And so here, Mr. Vasquez-Claudio challenges the Veterans Court's improper interpretation of 38 CFR 4.130, the rating schedule. Now, 4.130 is the rating schedule for all mental disorders, including PTSD, and a Veteran is entitled to a certain rating if he meets the criteria set forth there. So what is it that you would have the Veterans Court do? You would have them list each area and quantitatively figure out, does he have deficiencies in most of them, like IE 51%? Is that the way you want to do it? Well, I don't know if it would be necessarily quantitative in that we understand that this is a flexible inquiry, but I think that the regulations set forth there are certain factual findings that have to be made. So what we'd like is for the Veterans Court, or for the Board, to make them here. But they made them here. The Veterans Court went through and said, let's look at family life and see whether he's impaired or not in that. Let's look at his ability to work. I mean, in this particular case, those fact findings aren't present. Well, respectfully, Your Honor, I would argue that those fact findings are not present, at least the ones that are required by the plain language of 4.130. So, for example, they went through and listed a bunch of symptoms, but we don't actually have any factual findings as to what areas are applicable to him. Right? So that's the first factual finding. We don't have anything. We find that, you know, these areas are applicable. And then we don't have a finding saying – What about the regulation requires them to define areas that are applicable to him? The regulation says, such as. Right. So consistent with this, with this Court's opinion in our – or with the Veterans Court's opinion in our hand and this Court's opinion in Seller's which approves of that, such as means that these are exemplary. Right? So these are areas that could apply. There may be other areas that apply for him. But others of a like kind. Yeah, others of a like kind. Of a like kind. So, for example, in the 70 percent category, you're looking at specific types of symptoms, and you're saying, well, what's comparable to a suicidal ideation, right? I think with respect to symptoms, absolutely. I mean, so basically, in our hand in Seller's, that kind of dealt with the second half of this regulation, the symptoms, and I think it's very clear that these are symptoms. And remember, these are symptoms for all – You don't pick up symptoms, say, for example, down in the 30 percent category and run those into a 70 percent analysis, right? Well, I think that you don't have to have any of the particular symptoms that are set forth here. So, for example, there could be a Veteran who can be awarded a 70 percent disability rating, and he can have not one of those listed symptoms. He could, for example, have some of the symptoms. Yeah, but he would have to have symptoms that are of a like kind of the ones that are listed. Well, I would agree that they would need to be of a like kind if these are examples. You need to have some symptoms. How do you determine that there is a particular functioning area that is applicable without assessing the symptoms? Because it's the symptoms that are indicative of the inability to function in a particular area, correct? Well, I think that – That's why they're listed. Right, so I think that the symptoms allow you to determine whether or not there is a deficiency in a particular area. But I think that, for example, different people may have different areas that are applicable to their life. So, for example, someone doesn't have school applicable to them because they're just not in school. So you can make that determination. Take mild memory loss, which is a symptom in the 30 percent category. Let's assume that your client had – that all they had was a mild memory loss. But your argument was that that mild memory loss created occupational and social impairment in lots of areas. Mm-hmm. Could your client prevail? Potentially, if it was found that that memory loss created a deficiency in most of those areas. A mild memory loss, which would gain you a 30 percent rating. But you're going to come in and say, well, I have a mild memory loss, but that's causing me some problems at work, at school, and in family relations, and in judgment-making, and in mood. Well, respectfully, Your Honor, mild memory loss isn't what gains you the 30 percent rating. You don't have to have any of those symptoms there. You just have to have some symptoms. Well, you have to agree, don't you, that 4130 says deficiencies in most areas. The kind of mild memory loss that Judge Clevenger is talking about doesn't mean necessarily rise to the level of a deficiency in and of itself, right? 4.126 says, shall consider frequency, severity, duration, length. So mild memory loss might put you on the map a little bit for work problems or family relations, but it may not be enough. Even if you can show that mild memory loss affects every area, it may not have the severity or the frequency sufficient to meet 70 percent. I think that's right, and I think that's why you look at the symptoms, and you look at whether or not those symptoms cause a deficiency. I agree if someone had mild memory loss, you know, once a year or something, that may not rise to the level. If you take your client's position, we're going to look at the symptoms on those 70 percent. Your client has no suicidal ideation, no obsessional rituals, no speech impairments, right down the line. There's possibly some difficulty in adapting to stressful conditions at work if he wants to work in a police department. Your client is not showing any of the listed symptoms or symptoms of a like kind. Well, respectfully, Your Honor, he doesn't have to show. I'm just saying, for purposes of looking at your client who's coming in and saying, I would like to be able to show that I'm entitled to a 70 percent rating, but I don't exhibit, so I'll give you a difficulty of adapting to a stressful situation at work if he's going to work as a police officer. But there's no indication in the record that he would have stress in working in a library. So, looking at the record, your client shows not a single one of the symptoms under the 70 percent rating, nor does he show anything of a like kind. Because, for example, a little bit of mild memory loss wouldn't be of like kind to a 70 percent symptom. Well, I would disagree that he doesn't show anything of a like kind, and I would just reiterate that he doesn't have... Would you give me an example of what he doesn't... What are his symptoms of a like kind to the eight or nine that I've listed that he doesn't have? So, for example, there was suicidal ideation reported. Long time ago. There have been instances of it that have been reported. Long time ago. So, let me ask this question, because neither side of the brief does it. Which examination is the final decision maker supposed to look at? Let's assume that your client has been analyzed from, say, 1990 to 2013. And maybe in 1991, they reported a suicidal ideation. But in every successive report after that, there was no such indication he got cured. He doesn't have that problem. Why would you pay any attention to any study other than the most recent one? Well, I think that the board is required to look at all the evidence, and also you have the ability to assign different ratings. What case from our court holds that any report other than the most recent one is significant? Because people may have shown all sorts of symptoms during the course of time, and maybe they got a rating at a level, and they want to come get a higher rating, but they don't have any of those symptoms anymore. So, my understanding is that they have to consider all the symptoms. I read that language in some of the CAVC decisions. Has our court ever held that? What would happen if you had someone, and your client came up for the most recent one, was it 2009? I can't remember. I think it was 2010. Yeah, 2010. Your client came up, and he goes in, and he has a complete study, and the examiner says, My God, you're clean. You don't have a, you know, nothing. You are cured. Right. So, hypothetically. So, he wants to bump up to 70% rating, because in 1992, he had a suicidal ideation. Well, for example, you have the ability to set different ratings at different times. So, he could have 1992 to 1995, 70% compensable. I understand. Now, 1995 on. So, that may go into the fact that he may merit a reduced rating. Once you get compensable at a rating, you don't ever lose it, right? My understanding is that you can lose it for a future time period. So, for example, if someone were to completely recover, and there were, you know, He doesn't have to give the money back. He doesn't have to give the money back. No. But you can go from a 70% rating, or even a 100% rating, down to a nothing rating, depending on Depending on the time period that it applies for. So, I would argue there that if, you know, there was that episode back there, and, for example, there were those episodes, that might tend toward looking, you know, If you look at the 100% rating, for example, I mean, the problem we've got here is the lead-in language on occupational and social impairment, and it varies from rating to rating. But at the 100% rating, it says, Total occupational and social impairment due to, and you have these symptoms. I would think the way this regulation works is if you come in and show that you have a lot of those symptoms, it is assumed that you are totally occupational and socially impaired. I mean, I think the special inquiry is whether or not the person has occupational social impairment, and then we'll ask... It's whether the horse has in front of the car, or the car has in front of the horse. But if someone comes in and shows that they have gross impairment, all of the symptoms under the 100% rating, I would assume that the answer is that person is totally occupational and socially impaired. That would certainly be... It's a conclusion that you reach from the evidence. That would certainly be probative of that, and that would be a fact that you need to be found. But back to a question I'd asked earlier, which is, Well, didn't the Veterans Court in this case make all these fact findings? Why isn't the analysis on page 822 and 823 of the appendix exactly that? They talk about his relationship with his wife, i.e., family relations. They talk about his work. They actually parrot the exact language of 4130, saying, The evidence is not consistent with occupational and social impairment with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood, which would warrant a 70% rating. They talk about his mood expressly. They talk about his speech and coherency. They talk about no signs of psychosis, mood with only mildly anxious. Why isn't this all of the facts? I guess I don't know what else you want him to do. They parrot the exact language of 4130, and they hit every single one of the things. They talk about his thinking. They talk about his friends. He goes to church. He has some interests. I just don't understand what you want them to do. I guess maybe it might help, because the government kind of tried to make this argument and said it's more in the pages 8 and 9, and they're briefed, saying, Look, they looked at these things. You can group them together. What they really did is they discussed a bunch of different symptoms, but they didn't actually link up as to whether those symptoms created a deficiency in any of the applicable areas. What do you mean? Right after they consider all the symptoms, this evidence is not consistent with occupational and social impairment with deficiencies in most areas. Well, they recited at the end that the evidence was not consistent with the standard. So I agree that they said that. But they didn't actually go through and say, Okay, work. Is there a deficiency in work? Well, you would prefer to have the inquiry start by focusing on the deficiencies in areas with regard to occupational and social impairment. And someone would come in and say, Well, I'd like to make a showing that I've got an impairment at work, and here are the following reasons for it. And so you discount the significance of the symptoms. Well, it isn't that I discount the significance of the symptoms, other than, of course, the fact that you don't have to have any of the particular symptoms here in America. At bottom, you admitted in your argument that you can have a veteran who has not a single symptom, say in the 70% category, and has no like symptom. Nothing that anyone in the medical arts would say is similar to those symptoms. Instead, they have a bunch of 30% deficiency, 30% category symptoms. So they've got a mild memory loss. And I see your argument. You're saying a person, a veteran, is entitled to a 70% rating if they have mild memory loss, and they've got somebody that can testify that that mild memory loss is creating deficiencies in most of these areas. I mean, I think that that's where, you know, for you... That's right. Isn't that your position? I mean, I think the question is whether... Yes or no. Yes or no. That is your position. Right. So that the trouble that the secretary or somebody went to to define particular types of symptoms, and symptoms of a like kind, for a 70% rating is irrelevant. It's not that it's irrelevant. I think that it helps to determine the type of symptoms. You're going to basically destroy the structure of the symptoms that we've been told in a comparative... Another one of the regulations says you've got to look at all these symptoms, and the severity of them, and how often they come up, and what not, as a general testing device. But you're going to say that someone can have 10% rating type problems, and nonetheless get themselves a 100% rating, or a 70%. What do you mean 10% rating type problems? Are you talking about... No, you look at what the symptoms are, the symptoms, okay? You can have a person that has a mental condition that's diagnosed, PTSD, but the symptoms are not severe enough to either interfere with the functioning. Now, those you couldn't possibly get a higher rating if that was actually true, right? I mean, I... Because you wouldn't... Nothing has affected your ability to work or social impairment. I mean, I think the question is whether or not you have deficiencies in those... I mean, every single one starts out occupational and social impairment. That's always the threshold inquiry we're trying to find out, whether or not there's occupational and social impairment. But I think that here, in particular, there's really nothing to apply or to distinguish. You know, when you try to figure out whether or not someone gets a 30% rating, a 50% rating, a 70% rating, other than by trying to follow the plain language, which asks whether or not the veteran has a deficiency in those areas. Well, let's go back to that for one second, because I asked you before, why isn't what's done on 822 and 823 enough? And you said, for example, Your Honor, they don't look at work. Well, on the bottom of 823, I'm going to read to you, with respect to the veteran's PTSD and his ability to work, comma, the board acknowledges the veteran has experienced some emotional and mental health difficulties during his last job as a police officer. However, the board emphasizes the specific findings of multiple VA examiners indicating decreased efficiency and marked impairment, but not total impairment. Moreover, the most recent VA examiner, in May of 2009, described the resulting functional impairment from the veteran's PTSD as moderate. Why isn't that exactly the analysis you want them to do for work? Because from everything that was just read there, I still don't know whether or not he has a deficiency in work. Sure you do. You know he has a deficiency, it says so. He has some emotional and mental difficulties, but you also know the deficiency is only moderate, i.e., not total, inciting him to 100%, and not, you know, minor, inciting him to nothing, because you also have to consider the severity, not just whether he has a deficiency, but the severity. And they said he has, and they said it's moderate. Well, moderate fits right in the middle. It doesn't quite meet the 70% limit. Well, other than, for example, his... I want to hear her response to it. I promise. So moderate fits right in the middle, right? Moderate is 50 or moderate is 70. Which one's moderate? The question is not whether or not it's moderate, you know, and we can all differ on what moderate symptoms are here, but whether or not, you know, the actual regulatory criteria are being applied. And they don't ask, does he have a bunch of symptoms, and are they moderate, so let's give him a 50. They say, does he have deficiencies in most areas due to specific symptoms? If so... You threw out my 51% number. I said, well, no, it's not a percentage in the beginning when I said, and we both agreed that deficiencies, we look back and say the severity, frequency, duration, that that's what's relevant. I don't see how they didn't do that. We look at that to determine whether or not there's a deficiency, right? So, for example, someone who had, you know, an intermittent symptom that, you know, happened once, and they've had that symptom, you look at the severity, frequency, duration, it may not rise to the level of deficiency. So, I mean, if this court, if the veteran's court, is supposed to look and see whether or not, you know, the regulatory criteria have been followed, how can you know whether or not a veteran has deficiencies in the following areas if there's no finding as to whether or not he's yes or no as a deficiency in the following areas? So you're saying once there's a determination that he has a deficiency, period, just a deficiency, regardless of what type of deficiency, as long as it's in most of the areas, he gets the 70% rating, regardless of how severe that particular deficiency might be. I think that that's what the plain language of the regulation says. Well, then you just threw 4.126 out the window, because it says frequency, severity, and shall. Right, so I in no way mean to throw 4.126A out the window. So how do you determine whether or not there's a deficiency? We look at the frequency, the severity, the duration. It looks to me like the BVA decision, which is what the presiding judge was citing from, may have a concern. For example, can he maintain relationships with his wife, his children, and that sort of thing? That goes to social impairment. So they're making that judgment. Why isn't this a case where you're basically just arguing that you think the facts got applied incorrectly? So as to the issue, I see that I'm into my rebuttal. Thank you. So as to the issue of jurisdiction, this isn't a question about how this was applied to the facts. This is about what analysis is actually required by the regulation. No, but if the presiding judge is correct that the BVA had its eye on the ball and was looking to see whether or not there was deficiency in those areas, and they were taking off a number of the areas like social impairment where there's no deficiency, then why can't we look at the BVA as though it were applying the correct law? And you're simply complaining about how the law was applied. Well, I think that the BVA was strewing. Sorry, the BVA or the Court of Appeals for Veterans Claims? Well, I mean, the CABC is basically just adopting what the BVA did. Right. So the CABC specifically said the issue is not 4.130. The issue is 4.126a. And respectfully, that's contrary to the plain language of 4.130 and it's the duty of this Court to clarify what 4.130 means. Well, unfortunately, your regulations you see as being the dominant law. If the regulations are inconsistent, then our job is to construe them, right? Yeah, it's your job to construe them to say what exactly is required by 4.130. What does it mean? And, I mean, I don't know if it's dominant or whether it's dominant, but one of them actually sets forth the ratings criteria and the other one doesn't. So if you just look at 4.126a, that doesn't tell you whether or not someone should get a 30, a 50, a 70, it just tells you, look at the symptoms, look at the frequency, look at the duration. 4.130 tells you what you actually get, and that actually provides the criteria. Okay, we should hear from the government. Mr. Fruskin. Good morning. May it please the Court. I'd like to pick up on two of the main themes that are related that you were just discussing with Mr. Vasquez-Claudio's counsel. The first is that 38 CFR 4.126a requires the VA to assess the frequency, severity, and duration of the symptoms. That is the first inquiry that is made with respect to what rating should be assigned to a veteran seeking compensation for mental disability. After that inquiry is accomplished, it is the task of the rating specialist and the rating board to figure out, based on that analysis, what level of social and occupational impairment is most approximated by the symptoms shown as a result of the 4.126a analysis. That's exactly what happened in this case. The VA, the BVA, set forth its analysis of the frequency, severity, and duration of the symptoms demonstrated by Mr. Vasquez, and they concluded, as we state on page 10 of our brief, that the evidence is not consistent with occupational and social impairment with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood, which would warrant the 70% rating. Based on 4.126a... That is a general conclusion. Clearly, they parroted the language of statute and regulation. But how to respond to the argument that the 70% rating, and the reg itself says that what you have to prove here is that you're deficient in most areas. And it doesn't say you have to be deficient to 100% or you have to be severely deficient. As long as you reach a level that constitutes a deficiency that takes into consideration the symptoms, then that's how you meet 70%. It's written differently than the other rating schedules. It is. And what I would solve by saying that you need to look at how Mauerhand and Sellers interpreted the symptomology listed at the bottom of 4.130 to interpret how to look at the areas of deficiency. Mauerhand and Sellers both said that the symptoms are simply examples that show the approximation of the social and occupational impairment that you need to show to reach the 70%. The areas have the same language as the symptoms, such as deficiencies in areas such as these exemplar areas. And so, what Mr. Vasquez-Claudio is arguing, really, is that what you need to do is basically have a box system where you check boxes. You either have a deficiency in that area or you don't. But what that does is it completely ignores the fact that the rating schedule is set up to assess the severity of the symptoms. Well, isn't it true that Ms. Wadden-Murray candidly admitted that you can have a 70% rating because of deficiencies in those areas, even though you have no symptom in the 70% category or any like symptom? Under her interpretation or her view of 4.130. That's right. So, what I'm trying to get at is that, is it your position that you cannot get, you cannot have social and occupational impairment in most of these areas unless you have symptoms associated with the 70% rating or like? That's correct. And when the VA amended 4.130 in 1995, they specifically stated they were doing so to focus on the signs and symptoms and severity that demonstrate the social and occupational impairment. So, you can't have, you know, 30% or 10% symptoms, even if you complain that that causes you to have a deficiency in your work life and still get the 70% because you would be ignoring the role of the symptoms. The way I read the regulation, both in the proposed rating and the final rating, it was almost as if saying that under 70%, if you showed that you had very severe collection of 70% symptoms or like kind, then you are going to be deficient in these areas, almost like a conclusion that follows. Right. I mean, I think they were trying to set up a somewhat objective framework, which said that if as a result, you know, the medical examiners look at what symptoms you have and they say, you know, whether you have a symptom, you know, difficulty or impairment in an area, which is, you know, two different levels. If you have those, then it's the rating specialist's job to put all that together to figure out what level of social and occupational impairment is shown by that. Are you moderately impaired to 50% or are you more severely impaired so that you get 70% or totally impaired so that you get 100%? But there isn't a sort of, you know, bright line rule as to whether or not, okay, you have this one symptom, okay, you're 70%. You have this one symptom, you're only 50%. I mean, the fact is that the mental health problems are all covered by this rating. But even if you accept the proposition that you have to have the symptoms that are listed in the 70% rating before you get to finding a particular area of deficiency, how do you get around the fact that the regulation itself talks in terms of the multiple deficiencies? In other words, the point seems to be that a 70% is saying when it's not just you can't work or it's not just that you don't get along well with your family, it's that you really mess up in a lot of different areas. And so your functioning in life just isn't working. And so why would it be so difficult for a determination to actually be made that you've got a deficiency in work, you've got a deficiency in family, you've got a deficiency in social, even if you're looking at the severity of these underlying symptoms, rather than just say mushing it all together like appears to be done here or appears that you argue that we're going to say your totality of impairment is 51% or not? Well, I would start by saying it isn't hard. It isn't hard for the board to assess the various deficiencies, and we're not suggesting that the board is free to completely dispense with an inquiry into the areas of deficiency. What we're arguing is in this case what the board did fits within the requirements of 4.126A and 4.130. They looked at the areas of deficiency. They looked at the symptoms to assess what effect it had on the five areas. What Ms. Lawton is trying to do is to say that you can get a 70% rating even though you have no 70% symptom or like-kind. I would think that would be very upsetting to the secretary. It would. It would. Okay, so let's assume for purposes of argument that the board agreed with you that you can't get a 70% rating unless you have what I'll call a 70% symptom or like-kind, okay? What would be the problem if we went on to say that once you have decided that there are all these severe symptoms that under 4.126 come up all the time, you've got a bunch of 70% symptoms, you still have to make, somebody has to make a showing as to whether or not there is impairment, social and occupational, in most of these areas. So like just tick them off because it probably is possible that an unusual person could have a bunch of 70% symptoms and not be massively impaired. Sure. The problem with this court instructing the VA to do that would be that it's outside of this court's jurisdiction to tell the VA how to apply the regulation. I mean, what it boils down to is the reasons in Macy's challenge. What you're suggesting... That's not what Ms. Lockhart is saying. If we interpret the regulation on its face, she doesn't like the notion that I'm going to restrict 70% to 70% symptoms or like-kind. But once you've done that, my question is what's the harm in saying to the BVA, as they almost did here, because they say, well, there's no social impairment because you can get along with your wife and your son, but if they just went down the line and said, well, given all these symptoms or the lack of them, there is no deficiency in work, school, family relations, judgment, then you're good. Just tick them off. Respectfully, to me that sounds like this court telling the BVA how to apply 4.130. There you go. In applying 4.130, you must put headers for each of the areas listed here and you must state a yes or no answer to the question of whether they have a deficiency in each of these areas. Your core argument is that there's a jurisdictional impairment to the appeal here. Correct. Basically what the BVA was doing is looking at the symptoms that fall within the 70% category, determining whether or not they exist, and then saying, based on what we find, we don't see a social impairment. That was enough. Correct. The board here did what 4.126A and 4.130 require, and to argue that somehow that involved an interpretation of the regulation, I mean, Ms. Lawton has to make that argument in order to get jurisdiction, but the fact is that the VA acted in conformity with these regulations and, frankly, for... Are you going to explain to us what's going on in the case that's been cited to us? Who? Payne, the Payne v. Shinseki. In Payne v. Shinseki, the secretary agreed that the board had failed to comply with Mauerhand, that it had not assessed all of the evidence of record, and therefore they agreed to... The secretary seemed to say a little more than that. He seemed to suggest that the areas in particular weren't ticked off and deficiencies weren't found in them. Well, first I'd like to say that the joint motion is not actually an authority with precedential value, but even if we accept the language of that as the secretary's overall position, I would say that it was somewhat inarticulate wording as to what analysis needed to be done, but what it doesn't say is that they have to go back and make a factual finding as to each of the areas listed there. It simply says you need to go back and do the inquiry required by 4.130. I'm not standing here saying... Were you not who drafted the joint motion? Was that drafted by the department? I don't know the answer to that question. When the reg says you have to have deficiencies in most areas, how is that not quantitative? How is it not the case that the agency has to tick off the areas and say most of the areas represent deficiencies or most of the areas don't? Well, I would answer that unfortunately with a question. How do they figure out whether you have a deficiency in most areas and what areas are there? It's just a list of example areas, so you could conceive of many more areas beyond that. The fact is that it is a test set up to allow the rating specialist to determine the severity, and I think it's differentiated from 100% as opposed to 50%. 100% is in you have total impairment in all the various areas of your life. 70% is you're not quite fully impaired. You have deficiencies in a lot of the areas of your life shown by these symptoms, but there are some where you're... Not a lot. Most. The regs are very clear. Most of the areas. Right. Well, I don't know if that means 50% is three out of six, four out of six. I don't know because... But wouldn't that be a fact issue for the board to decide, and we would have no authority, since our jurisdiction is limited, to say you got it wrong. It had to be three of five or six of eight or whatever. Correct. But they just didn't do it at all here, and that's their argument. They didn't follow the reg. They seem to misinterpret the reg because they don't even think they have the obligation to assess deficiencies and say how many or what percentage or yes, it's most. But they did follow the regs because they assessed the five areas that they found applied to his life. They didn't assess school because he wasn't in school at the time, and they came to the conclusion that he did not show social and occupational impairment in most of the areas listed in 4.0. Really, they think that his work impairment was moderate. That's an impairment, right? That's a recognition that he has a moderate deficiency in work. Why isn't that enough to check off the deficiency in work box? Because impairment in his working ability is also a symptom set forth in the 50% rating. So it isn't that work... No, but the 50% rating doesn't take most areas. The 50% rating sets off impairment in one, but here you have to impairment in most. So work, he's got an impairment. It's moderate. When you go through each of the things with regard to his wife, we're talking about struggling with the adversity, witnessing sleepless nights, flashbacks, nightmares, emotional instability, you know, in public you've got impairment there, too, another deficiency check. So then you go to each of these different areas. Why don't they establish his deficiencies? I guess the problem is I think you made fact findings, but I think all your fact findings actually establish deficiencies in all these areas, so it doesn't actually help you. But that is a question beyond this court's review, whether or not the fact finding equates to a certain level of disability is a factual determination. But doesn't this actually show that she's exactly right? If you had applied the letter of the regulation by looking at each area, one by one, to determine yes or no deficiency and then look overall that you would have come to a conclusion that the veteran is entitled to the 70% rating and, in fact, the way that you analyze these demonstrates that you clearly didn't interpret the regulation properly. Only if you accept that what the inquiry for the 70% rating is is basically a box-checking activity. Do they have a deficiency here? Okay, check. Do they have a deficiency here? Check. The question is the severity of the deficiency. Here they found that they did not have a deficiency severe enough to warrant a 70% rating in most of the areas. But I don't see that analysis being present, which, again, supports her notion that you didn't follow the regulation or you didn't understand what you were required to do under the regulation. That gets back to the point of whether or not the 70% rating is available to someone that has no 70% symptoms or similar symptoms. To me, that's basically what the appellant is trying to establish here. The record is perfectly clear that with the exception, possibly, of stressful situation at work in the police department where he saw the guy kill himself, and there's nothing in the record about whether or not he's capable of doing any other kind of work, then are I correct that there are no 70% symptoms? Correct. It starts to sound like a challenge to the rating regulation itself, that the VA somehow set this up poorly and that the regulation itself should be overturned because under Ms. Lawton's reading of the regulation, any deficiency of any level in a certain area, you could check that box for the 70%. And so the question really needs to be the severity of the symptoms as opposed to a sort of objective. Do they have it? Is there any sort of level of deficiency? Just to take an example, suppose you have very, very severe migraine headaches and they're very severe and they happen all the time. That could get you a set under Ms. Lawton's period. That could get you a 70% rating because it would show, well, this problem I've got creates problems at work, at home, every place else. Correct. I mean, the mental health disability regulations are purposely flexible because it's not the same as a situation where you can say, okay, if you have two broken bones, you've got a certain percentage. Let's put the question this way. Assume that people would agree that it's symptom-driven. 4126, severity, symptom-driven. Symptoms are set up in each of the rating categories. So let's assume that you have a case in which there are absolutely no 70% symptoms of a like kind. Do you ever worry about social or work impairment? Yes. I mean, I think the inquiry... So why would you care if you had no... This is why I want to pressure you on it. If you had no symptoms at all of a 70% kind or equal to... Because your impairment in areas such as work and school show your social and occupational impairment. Social and occupational impairment, it included all of the steps of the disability. So that would be inquiry. You look at the symptoms and you figure out, okay, how socially and occupationally impaired are they? To do that inquiry, you have to look at the various areas of their life. I mean, it's not as if for 10%, 30%, 50%, they don't consider the effect of the symptoms on the veteran's ability to function normally in work and in life and in school. I mean, you can't assess the occupational and social impairment without looking at all the areas. Do you have a closing thought? I don't. I would simply ask that the Court dismisses the appeal for lack of jurisdiction or in the alternative, affirm the decision of the Veterans Court. Thank you. Thank you, Mr. Breskin. Ms. Lawton, we'll give you two minutes of rebuttal time. Thank you, Your Honor. I only have one further thought. I think it's come out both in our briefing and this argument here that we have differing interpretations of the regulations going on. We have what the CAVC said here in this case. Then we have Barnett, which was cited in my brief where the Court said something else. We have the agency arguing that the regulation requires something here in one case, and then we have them in a joint motion for remand arguing that it requires something else. And it is the province of this Court to say what the regulation means. And these questions are about what the proper interpretation of the regulation is. And that's why this Court has jurisdiction, and it should clarify the meaning of 4.130 and require that the disability be assessed under the plain language of 4.130. Ms. Lawton, in your February 1, 2013, letter to the Court when you brought the Payne case to our attention, you said that the joint motion for remand was granted by the CAVC. It was actually granted by the clerk of the Court, as I think you probably know. Okay, yeah. There was no judicial involvement. The way you wrote the letter suggested that perhaps a judge had approved of the joint motion for remand, having looked at the merits of the argument. Oh, I apologize. That wasn't my intention, but it was granted. Thank you, counsel. We take the case under advisement. We thank both counsel for their arguments.